```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION

Carol A. Wilson, et al.,      :

        Plaintiffs,            :

   v.                          :        Case No. 2:15-cv-1039

                               :        JUDGE ALGENON L. MARBLEY
                                        Magistrate Judge Kemp
Bill Hawk, Inc.,               :

        Defendant.             :
```

                    REPORT AND RECOMMENDATION

   This matter is before the Court on the plaintiffs' response to this Court's May 11, 2015 show cause order (Doc. 6), and the plaintiffs' motion for default judgment (Doc. 10). For the reasons set forth below, the Court finds that the plaintiffs have set forth good cause as to why this action should not be dismissed. Further, the Court will recommend that the plaintiffs' motion for default judgment be granted.

                          I. Background

   The plaintiffs in this action are the Trustees of the Ohio Operating Engineers Health and Welfare Plan, the Trustees of the Ohio Operating Engineers Pension Fund, the Trustees of the Ohio Operating Engineers Apprenticeship and Training Fund, and the Trustees of the Ohio Operating Engineers Education and Safety Fund (collectively "the Trustees") and Carol A. Wilson, an administrator authorized by the Trustees to bring this action on their behalf. The plaintiffs filed this action against the defendant Bill Hawk, Inc., alleging that the defendant entered into certain agreements which required it to make timely payments to the Trustees for each employee covered by the agreements. Specifically, the plaintiffs allege the following concerning the relevant agreements:

> Defendant executed two Distribution and Maintenance Agreements State of Ohio All Zones ("Distribution and Maintenance Agreements"), both of which are dated March 2, 2011 and February 12, 2014, and Acceptance of Agreement dated September 7, 2001, and a Non-AGC of Ohio/LRD Members Agreement dated December 3, 1999, by the terms of which Defendant also became a party to the Agreements and Declaration of Trusts that established the Ohio Operating Engineers Health and Welfare Plan, the Ohio Operating Engineers Pension Fund, the Ohio Operating Apprenticeship and Training Fund and the Ohio Operating Engineers Education and Safety Fund and became bound by the terms and conditions set forth therein.

Compl. at ¶10.  The plaintiffs allege that the Trustees' Field Auditor conducted an audit of the defendant's payroll records on June 19, 2014, and the audit disclosed unpaid contributions and late charges for the time period beginning October 1, 2013 and ending June 1, 2014.  The plaintiffs claim that, although the defendant has paid the delinquent contributions in full, it still owes late charges for interest which accrued before it paid the delinquent contributions.  The plaintiffs allege, inter alia, that:

> the Trust Agreements, Defendant's collective-bargaining agreements, and the rules and regulations adopted by the Pension Trustees on May 26, 1989 and by the Health and Welfare Trustees on June 13, 1989, by the Apprenticeship and Training Trustees on July 12, 1989 and by the Education and Safety Trustees on September 25, 1989, specifically provide that the Trustees shall be entitled to recover interest of 1.5 percent per month (18 percent per annum) times the unpaid balance of the delinquent contributions in addition to the unpaid contributions.

Id. at ¶11.  Thus, the plaintiffs claim that they are owed unpaid interest by the defendant.

Based on the foregoing, in Count I of the complaint, the plaintiffs claim that the defendant "owes the Trustees of all four funds interest on the audit findings in the amount of $9,881.69."  Id. at ¶13.  In Count II of the complaint, the plaintiffs allege that the Trust Agreements, the defendant's

2

collective bargaining agreements, and the rules and regulations adopted by the Trustees, in addition to 29 U.S.C. §1132(g)(1), allow them to recover all costs of collection, including reasonable attorney's fees.  Thus, the plaintiffs claim that the defendant "owes the Trustees of all four funds reasonable attorney's fees as set by the court and court courts."  Id. at ¶15.  In Count III of the complaint, the plaintiffs seek injunctive relief, alleging that the defendant "continues to refuse to comply with the agreements by failing, neglecting, omitting, and refusing each month to properly report and make contributions for each employee covered by the agreements, thus creating additional delinquencies each month."  Id. at ¶16.  In their request for relief, the plaintiffs seek an order of this Court allowing them to conduct an audit of the defendant's books and records, and they demand a preliminary injunction and a permanent injunction enjoining the defendant from violating the terms of the relevant agreements and disposing of any assets.  The plaintiffs also request that this Court retain jurisdiction over this action pending the defendant's compliance with Court orders.  Although the record reflects that the defendant received notice of the complaint, it has failed to respond.

## II. The May 11, 2015 Show Cause Order

In a May 11, 2015 order, this Court observed that the complaint had been served upon the defendant Bill Hawk, Inc., the time for filing an answer had passed, and that the plaintiffs had not moved for the entry of default.  Pursuant to Local Rule of Court 55.1, the Court directed the plaintiffs to show cause within 14 days why this action should not be dismissed.  The Court further ordered that, if appropriate, the plaintiffs should also submit a request to enter default pursuant to Fed. R. Civ. P. 55, and a separate motion for default judgment.  (Doc. 5).

On May 12, 2015, the plaintiffs filed a response to the show

cause order.  In the response, the plaintiffs state the summons issued by the Clerk's Office was defective.  More specifically, the plaintiffs state that:

> [u]pon examination of the Summons after its return, Counsel noticed that the Deputy Sheriff did not complete the Proof of Service on the second page of the Summons, nor did the Sheriff's Office provide a form which was signed under oath by the Deputy Sheriff.  As a result, Counsel then made a few attempts to fax the Summons back to the Sheriff's Office on April 22-23, 2015 which was received successfully on April 23.  Counsel then received the Proof of Service from the Sheriff's Office by mail on Monday, May 1, 2015.  Plaintiffs' counsel then filed the executed Summons on that date.

(Doc. 6 at 2) (citations and footnote omitted).  The plaintiffs' counsel indicated that he "had begun preparing default pleadings on May 8, 2014 ... and [he planned to] file the Application and Entry for Default Judgment within the next twenty-four to thirty-six hours."  Id.

Based on the foregoing, the Court finds that the plaintiffs have set forth good cause as to why this action should not be dismissed.  Further, consistent with this Court's order, the plaintiffs submitted a request to enter default pursuant to Fed. R. Civ. P. 55 on May 13, 2015 (Doc. 7), and a separate motion for default judgment on May 15, 2015 (Doc. 10).  The Clerk entered default against the defendant on May 14, 2015.  (Doc. 9).  Thus, the motion for default judgment is properly before the Court for consideration.

### III. The Motion for Default Judgment

Federal Rule of Civil Procedure 55(b) authorizes a court to enter default judgment against a party whose default has been entered by the clerk.  Once default has been entered, a defaulting defendant is considered to have admitted all of the well-pleaded allegations relating to liability.  See Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110 (6th Cir. 1995).

The mere determination of the defendant's liability does not, however, automatically entitle the plaintiffs to default judgment.  The decision to grant default judgment falls within the Court's discretion.  10A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. §2685 (3d ed.).  In determining whether to enter judgment by default, courts often consider such factors as

> the amount of money potentially involved; whether material facts or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt.  Furthermore, the court may consider how harsh an effect a default judgment might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant.

Id. (footnotes omitted).

While the well-pleaded factual allegations of the complaint are taken as true when a defendant is in default, damages are not.  Where damages are unliquidated, a default admits only defendant's liability and the amount of damages must be proved.  Id.  Although the court may conduct an evidentiary hearing to determine damages, such a hearing is not a prerequisite to the entry of a default judgment if a detailed affidavit allows a decision on the record.  See Joe Hand Promotions, Inc. v. RPM Management Co., LLC, 2011 WL 5389425 (S.D. Ohio Nov. 7, 2011).

In their motion for default judgment, the plaintiffs request interest in the amount of $9,881.69, attorney's fees in the amount of $1,690.00, and Court costs in the amount of $400.00. (Doc. 10 at 2).  Although the plaintiffs requested injunctive relief in the complaint, they do not request such relief in their motion for default judgment.  The plaintiffs' motion for default judgment is brought pursuant to Rule 55(b)(1).  That Rule applies to a judgment by default when the claim is for a sum certain.  It

states:

> If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

Unpaid interest is generally considered a "sum certain" under ERISA and the parties' agreements.  See Carpenters Labor-Management Pension Fund v. Freeman-Carder, LLC, 498 F. Supp.2d 237, 241 (D.D.C. 2007).

It is undisputed that the defendant entered into agreements with the plaintiffs obligating it to make employer contributions pursuant to those agreements.  Further, it is undisputed that the defendant made delinquent contributions and has failed to pay interest as required by the agreements.  Finally, the plan and funds at issue fall within the provisions of the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. §1002(1), (2), (3) and 29 U.S.C. §1132(g).  The plaintiffs claim the assessment of interest is authorized by 29 U.S.C. §1132(a)(3), which provides that a civil action may be brought "by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter."  In addition, the plaintiffs submitted the affidavit of Ms. Wilson, the administrator, stating that, upon her examination of the Employer Monthly Reports, the Trustees' Field Auditor's audit report dated June 19, 2014, and the records submitted to her by the defendant, she determined that the defendant failed to make timely contributions for the audit period from October 1, 2014 to June 1, 2014, and that the defendant had accumulated interest charges in the amount of

$9,881.69.  (Doc. 7, Ex. 1 at ¶6).

Ms. Wilson's affidavit is sufficient to allow a decision on the record without an evidentiary hearing.  Based upon the foregoing, the Court finds that the plaintiffs seek a sum certain in unpaid interest accumulated pursuant to the relevant agreements.  The Court also finds that ERISA allows for recovery of such interest in this action.  Consequently, the Court will recommend that the motion for default judgment be granted to the extent that the plaintiffs seek accumulated interest charges in the amount of $9,881.69.  The Court now examines the request for attorney's fees.

ERISA, 29 U.S.C. §1132(g) applies to attorney's fees and costs.  Here, the plaintiffs move for attorney's fees pursuant to 29 U.S.C. §1132(g)(1).  That statute provides that, "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of the action to either party."  "The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."  Imwalle v. Reliance Medical Products, Inc., 515 F.3d 531, 551-552 (6th Cir. 2008), citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed.2d 40 (1983).  "Where the party seeking attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled."  Imwalle, 515 F.3d at 552 (citation omitted).

In support of their request for attorney's fees, the plaintiffs attach the affidavit of counsel Bryan C. Barch.  Mr. Barch avers that he worked a total of 8.45 hours in this matter at a rate of $200.00 per hour. (Doc. 10, Ex. 1 at ¶5).  Thus,

7

the attorney's fees in this matter are $1,690.00.  Id. at ¶6.  A detailed invoice itemizing the fees is attached to Mr. Barch's affidavit.  The Court has reviewed the affidavit and the itemized fees, and it concludes that they are reasonable.  Therefore, the Court will recommend that the $1,690.00 in attorney's fees be added to the $9,881.69 owed for accumulated interest.  The Court will also recommend that the plaintiffs be awarded $400.00 in Court costs.

## IV. Recommendation

For the reasons set forth above, it is recommended that the motion for default judgment (Doc. 10) be granted and judgment be entered against the defendant in the amount of $9,881.69 in accumulated interest and $2,090.00 for attorney's fees and costs.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140

(1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir.1981).

                                              <u>/s/ Terence P. Kemp</u>
                                              United States Magistrate Judge